IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SHELLY A. SPYCHALSKI,

               Plaintiff,               OPINION AND ORDER

v.

                                              20-cv-399-wmc

ANDREW SAUL, Commissioner
of Social Security,

               Defendant.

      Under to 42 U.S.C. § 405(g), plaintiff Shelly Spychalski seeks judicial review of a final determination that she was not disabled within the meaning of the Social Security Act. Plaintiff argues on appeal that Administrative Law Judge ("ALJ") Jennifer Smiley (1) misidentified her onset date, (2) did not adequately consider Spychalski's residual functional capacity ("RFC"), and (3) improperly rejected her subjective reports of mental health symptoms. For the reasons discussed below, the court will reverse and remand the ALJ's decision, and oral argument set for March 18, 2021, is cancelled.

BACKGROUND[1]

A. Application and Onset Date

      On April 22, 2016, Spychalski filed a Title II application for a period of disability and disability insurance benefits. In her initial application, Spychalski alleged an onset date of March 2, 2012. However, at the hearing before the ALJ, Spychalski expressly revised her claimed onset date to be April 22, 2016. (AR at 40.) While alleging some

---

[1] The administrative record ("AR") is available at dkt. #15.

physical limitations, her claim of disability primarily rested on alleged mental limitations. (*See* AR at 43.)

### B. Medical Record[2]

Spychalski's medical records show that she has a history of PTSD, ADHD, depression, anxiety, and substance abuse. In particular, the records indicate that Spychalski's difficult personal history has contributed to her mental impairments, including emotional and physical abuse from her father, finding her fiancé dead in 2010, and her own abuse of heroin and other drugs. (*See e.g.* AR at 789.)

On April 15, 2016, Spychalski underwent a mental health assessment at the Madison East Comprehensive Treatment Center, including a review of her history of medication for anxiety, depression, and ADHD, panic attacks around crowds, feelings of isolation, and a lack of motivation. (AR at 343-44.) The treatment provider noted generally normal findings with respect to Spychalski's appearance, eye contact, facial expression, affect, speech, gross motor skills, energy, attention, memory, and intellect. (AR at 345.) However, the provider rated Spychalski's insight was as "poor" and her judgment as "easily overwhelmed." (AR at 345.) The diagnosis also reflected posttraumatic stress disorder, generalized anxiety disorder, major depressive disorder, and opioid use disorder, the latter in maintenance therapy with methadone. (AR at 345.)

At a follow-up, behavioral health appointment in May of 2016 with Jessica Younger, a post-doctoral fellow working under supervision, Spychalski presented with anxious and

---

[2] Because plaintiff's appeal discusses only the ALJ's treatment of Spychalski's mental impairments, the court will likewise focus its discussion on medical records discussing those impairments.

depressive symptoms, and she expressed a desire to establish care with a psychiatrist and therapist. (AR at 376.) Spychalski also reported anxiety, nervousness, difficulty relaxing, sleep issues, crying episodes, and a history of trauma. (AR at 377.) During this May 2016 appointment, Younger noted that Spychalski's orientation, cognition, and appearance were all normal, but that her mood and affect was anxious. (AR at 377.)

Two months later, on July 13, 2016, Melissa Gannage, MD, conducted a psychiatric diagnostic evaluation. (AR at 788.) Spychalski reported the following as her "chief complaint": "My Adderall got taken away and my addictions counselor told me I should see a psychiatrist." (AR at 789.) Spychalski explained that she "absolutely requires Adderall to function," and she had struggled with poor concentration and impulsivity since being taken off the medication. (AR at 789-90.) Spychalski also noted that she was experiencing "strong anxiety," particularly in crowds, making it difficult for her to leave her house, and although still "relatively mild," she had been "more depressed of late." (AR at 790.) Despite this, Dr. Gannage observed that Spychalski's thought process and associations, judgment and insight, cognitive orientation, memory, and fund of knowledge were all generally normal, while her mood was "anxious" and her affect was "restricted." (AR at 794-95.)

On December 13, 2016, Spychalski established care with Walker Shapiro, MD (family medicine). (AR at 840.) At this appointment, she discussed her historical and ongoing heroin use disorder and treatment with methadone. (AR at 840.) Additionally, Spychalski reported her ongoing panic attacks and having a hard time leaving her house, as well as having established care with a psychiatrist, taking sertraline for depression, and

3

being prescribed clonidine PPN for her panic attacks. (AR at 840.) Dr. Shapiro observed that her speech, affect, thought content, thought process, insight, and judgment were all fair or normal. (AR at 841.) Spychalski next followed up with Dr. Shapiro on February 24, 2017, during which they discussed Spychalski's desire to increase her dose of sertraline to help with her depression and to resume Adderall. (AR at 848-49.)

Then, between May of 2017 and December of 2018, Spychalski met six times with Jeremy Peacock, M.D., who specializes in sleep disorders psychiatry. (*See* AR at 882-922.) Between May of 2017 and July of 2018, Spychalski consistently reported problems with focus and mood, depression, inability to get out of bed, difficulty leaving the house, issues with talking and people, panic in groups, difficulty with motivation when off of Adderall, poor concentration, and low energy. (AR at 882-907.) Notably, in May of 2018, Dr. Peacock resumed Spychalski's Adderall prescription with the goal of improving her overall function and attention. (AR at 907.) By July of 2018, Spychalski reported feeling "better overall," and by December of 2018, she was reportedly "doing ok." (AR at 913, 922.) Nevertheless, Spychalski continued to report difficulty being out and about throughout her time with Dr. Peacock, and while he observed generally normal appearance, behavior, language/speech, thought process and associations, judgment and insight, memory, and fund of knowledge (AR at 883, 890-91, 899, 907, 914, 923), before July of 2018, he noted that her mood and affect were depressed, frustrated, or anxious (*see* AR at 883, 890-91, 899, 907).

C. **Opinion Evidence**

Despite Spychalski's longstanding treatment history, the only formal medical

opinions offered in this record related to plaintiff's mental limitations were those of two state agency doctors. On August 29, 2016, Michael Cremerius, Ph.D., opined that Spychalski would be limited to: understanding and remembering simple instruction; performing simple, routine tasks; brief, infrequent, and superficial contact with co-workers and the public; and no fast paced tasks with strict production quotas, while still able to perform variable paced tasks, including end of day production quotas. (AR at 81.) Michael Bohnert, M.D., provided the other formal opinion on reconsideration on December 14, 2016. (AR at 95-96.) Dr. Bohnert concluded that Spychalski could: remember and understand simple ideas; maintain concentration for two hour time periods in an eight hour day and a forty hour week; maintain social interaction around simple work tasks; and adapt to changes in her environment. (AR at 95-96.) However, Dr. Bohnert also opined that Spychalski "cannot concentrate or be out in public very long." (AR at 96.)

### D. Subjective Statements

In her own "function report," Spychalski stated that she (1) only goes out when necessary, (2) may sometimes go several days without leaving home, (3) has panic attacks in crowds, and (4) is very unsociable at times. (AR at 256.) Spychalski also reported problems with memory, completing tasks, concentration, understanding, and following instructions. (AR at 261.) However, she acknowledged being able to follow written instructions "very well" and to follow spoken instructions "pretty well." (AR at 261.) Finally, Spychalski reported going grocery shopping once a week (albeit quickly, before a panic attack could set in), as well as using public transit. (AR at 259.)

During the evidentiary hearing before ALJ Smiley, Spychalski testified that she felt unable to work primarily because of her PTSD, ADD, anxiety and panic attacks, difficulty leaving the house, and difficulty being around crowds. (AR at 51.) Spychalski further testified that she drives to the methadone clinic daily, but is unable to get there two to six times a month because of her inability to leave her house. (AR at 53.) Spychalski also acknowledged being able to do housework, drive, go grocery shopping, and babysit her grandchildren. (AR at 52, 55-57.)

### E. ALJ Decision

On March 25, 2019, the ALJ issued her decision denying Spychalski's application for disability and disability insurance benefits under the five-step sequential method. At step one, ALJ Smiley found that Spychalski had not engaged in substantial gainful activity since 2012. (AR at 22.) At step two, she found that Spychalski had the following severe impairments: "degenerative joint disease, depression, posttraumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), and substance abuse disorder." (AR at 22.)

ALJ Smiley next considered whether Spychalski's conditions met or equaled the criteria of a listing-level impairment at step three. (AR at 23.) Material to this appeal, the ALJ specifically considered whether Spychalski's mental impairments met the relevant listings. As part of that analysis, the ALJ considered the "paragraph B" criteria, finding that Spychalski had: (1) a mild limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining pace ("CPP"); and (4) a mild limitation in

adapting or managing oneself. (AR 18-19.) Overall, the ALJ concluded that none of Spychalski's impairments, either singly or in combination, were presumptively disabling. (AR at 23-24.)

At step four, the ALJ found that Spychalski retained the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: she can understand, remember, and carry out simple instructions, make simple work-related decisions, and tolerate occasional change in a work setting, occasional interactions with supervisors and coworkers, and no interaction with the public.

(AR at 24.) In arriving at this formulation, the ALJ reviewed and discussed the evidence in the record, including the two state agency mental assessments. (*See* AR at 24-28.) The ALJ gave "some weight" to both opinions, explaining that they were "generally consistent with the record," but that "given the record as a whole, including the testimony of the claimant and subsequent records noting continued normal psychiatric functioning (6F, *for example*), I have provided for somewhat different limitation, as detailed above." (AR at 28.) ALJ Smiley further considered Spychalski's statements about the intensity, persistence, and limiting effects of her symptoms, but ultimately concluded that they were inconsistent with the evidence in the record. (AR at 25.)

Finally, at step five, the ALJ accepted the vocational expert's testimony that there existed jobs in significant numbers in the national economy that Spychalski could perform with the formulated RFC. (AR at 29.) Accordingly, ALJ Smiley concluded that Spychalski was not under a disability and denied her application. (AR at 30.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Edwards*, 985 F.2d at 336. If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 2006).

I. **Onset Date**

Plaintiff first faults the ALJ for incorrectly identifying plaintiff's amended onset

8

date. As noted above, plaintiff initially alleged an onset date of March 2, 2012, but amended it to be April 22, 2016, at the hearing. In her written opinion, however, the ALJ used the 2012 date and, therefore, included in her discussion evidence dating back before 2016. This was an indisputable error, and one that the court cannot say was harmless. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("An error is harmless only if we are convinced that the ALJ would reach the same result on remand."). This court recently addressed a similar situation in *Irish v. Saul*, No. 19-CV-35-JDP, 2019 WL 5205894 (W.D. Wis. Oct. 16, 2019). In that case, the ALJ listed the claimed onset date as July 2013, when in fact the correct date was April 2016. *Id.* at *2. This court rejected the Commissioner's argument that the error was harmless because there was evidence that the claimant's condition worsened after 2016. *Id.; compare Meinen v. Colvin*, No. 1:14-CV-318-JVB-SLC, 2015 WL 6674853, at *3 (N.D. Ind. Oct. 30, 2015) (ALJ's incorrect use of original onset date was harmless error as plaintiff failed to demonstrate that there was any difference in plaintiff's condition between the original and the amended onset date).

In this case, as ALJ Smiley herself noted in her decision, various records before 2016 found that Spychalski had been "doing well" and had improved mood and functioning. (*See* AR at 26-27.) In April of 2016, however, Spychalski appears for the first time to have begun the process of establishing care with a psychiatrist, in part because she had been taken off of Adderall by her physician. In July of 2016, Spychalski also reported that she had been "more depressed of late" (AR at 790), and in treatment notes between 2016 and 2018, her mood was often noted as depressed, anxious, and/or frustrated (AR at 882-907.) Given evidence that Spychalski's mental impairments worsened in 2016 (the correct onset

9

date) as compared to 2012 (the onset date identified by the ALJ), the court is unable to find the ALJ's error was harmless. Accordingly, remand is warranted.

## II. RFC

Next, plaintiff argues that ALJ Smiley's RFC was not supported by substantial evidence because she failed to take into account Spychalski's moderate CPP limitations and improperly altered the opinions of the state agency physicians. (Pl.'s Br. (dkt. #19) 8-12.) For the reasons discussed below, the court again agrees that the ALJ's RFC analysis was flawed.

Plaintiff first argues that the ALJ erred in her treatment of Spychalski's moderate CPP limitations in formulating the RFC. Well-established case law in the Seventh Circuit holds that "catch-all terms" -- like "simple, repetitive tasks" or "no fast paced production" -- are insufficient to account for moderate limitations in CPP. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to the RFC finding, we have . . . underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace.") (citation and quotation marks omitted); *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may

10

serve as a proxy for including a moderate limitation on concentration, persistence, and pace.").

Nevertheless, after finding at step three that Spychalski had moderate CPP limitations, ALJ Smiley included the following, catch-all phrases to accommodate for Spychalski's mental limitations in her RFC: "she can understand, remember, and carry out simple instructions, make simple work-related decisions, and tolerate occasional change in a work setting, occasional interactions with supervisors and coworkers, and no interaction with the public."  (AR at 24.)  Under Seventh Circuit precedent, these catch-all terms fail *unless* the ALJ otherwise specifically accounted for CPP limitations in formulating her RFC in one of two ways.  *First*, the Seventh Circuit recognizes that "an ALJ may reasonably rely upon the opinion of a medical expert who translates [CPP] findings into an RFC determination."  *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *see also Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010) (holding that an ALJ may rely on the opinion of "a medical expert who effectively translated an opinion regarding the claimant's mental limitations into an RFC assessment"); *Rankila v. Saul*, No. 18-CV-406-WMC, 2019 WL 4942110, at *3 (W.D. Wis. Oct. 8, 2019) (providing overview of Seventh Circuit cases describing this exception).  *Second*, the court will affirm "RFC determinations . . . when they adequately account for the claimant's demonstrated psychological symptoms." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (citing *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002)); *see also O'Connor-Spinner*, 627 F.3d at 619 (providing examples of this exception).

Neither exception applies here. Most glaringly, both state agency psychologists included *greater* limitations in their narrative explanations than those included by the ALJ in her RFC. For example, Dr. Cremerius limited Spychalski to "no fast paced tasks with strict production quotas" and "simple, routine tasks," and Dr. Bohnert found that Spychalski had "poor concentration" and limited her to maintaining concentration "for two hour time periods in an eight hour day and a forty hour week." (AR at 81, 95-96.) None of these limitations were included in the ALJ's RFC. The ALJ's RFC determinations also do not appear to account in any meaningful way for all of Spychalski's psychological symptoms. In particular, her problems with concentration are frequently noted in the medical record, as are her difficulties with leaving her house and problems with motivation, yet the ALJ fails to explain how these impairments are accounted for in her RFC, much less account for them in some discernable way in the RFC itself.

Relatedly, plaintiff criticizes the ALJ for her treatment of the state agency psychologists' opinions. The ALJ purported to give "some weight" to the two state agency psychologists' opinions, finding them to be generally consistent with the record, but concluded that "given the record as a whole, including the testimony of the claimant and subsequent records noting continued normal psychiatric functioning (6F, *for example*), I have provided for somewhat different limitation." (AR at 28.) As plaintiff points out, the Seventh Circuit has explained that "[a]n ALJ need not credit the opinions of the agency's own doctors, but rejecting the opinion of an agency's doctor that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (quoting

*Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)). Here, while the ALJ provided a robust discussion of plaintiff's mental impairments as reflected in the medical record, many of which included normal or average findings, most of these records *pre-dated* Spychalski's actual onset date. Moreover, the state agency psychologists' opinions relate in part to Spychalski's CPP limitations, which the court has already found that the ALJ did not properly analyze. Therefore, on remand, the ALJ will also need to reconsider her assessment of the state agency psychologists' opinions.

### III. Subjective Complaints

Plaintiff finally argues that the ALJ did not properly consider Spychalski's subjective complaints. Social Security Rule 16-3p provides a two-step process for evaluating an individual's subjective complaints regarding her symptoms. *See* SSR 16-3p. ALJs are directed first to determine whether the claimant has an impairment that could be expected to produce the alleged symptoms, then to evaluate the intensity and persistence of those symptoms, as well as the extent to which the symptoms limit the individual's work-related activities. *Id.* An ALJ's determination regarding a claimant's subjective symptoms is afforded "special deference." *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008). Courts may only overturn such a determination where it is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (upholding an ALJ's credibility determination where the "ALJ's credibility determination was not flawless" but still "far from 'patently wrong'").

In her written decision, ALJ Smiley adopted the proper legal standard in reviewing Spychalski's subjective report of symptoms, ultimately concluding that: "the claimant's medically determinable impairments could reasonably be expected to cause the alleged

13

symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR at 25.) However, since the evidence cited by the ALJ to support this conclusion significantly pre-dated Spychalski's actual onset date, the ALJ is directed on remand to reconsider Spychalski's subjective complaints in light of the appropriate time frame.

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff Shelly Spychalski's application for disability and disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. 405(g) for further proceedings consistent with the opinion set forth above.

Entered this 18th day of March, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge